PEARSON, MJ.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| CARLETON E. AVERILL, II | ) | CASE NO. 3:06CV2867 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | JUDGE JAMES G. CARR |
|  | ) |  |
|  | ) | MAGISTRATE JUDGE PEARSON |
| v. | ) |  |
|  | ) |  |
| GLEANER LIFE INSURANCE | ) |  |
| SOCIETY, et al., | ) | **REPORT AND** |
|  | ) | **RECOMMENDATION** |
| Defendants. | ) |  |

Before the Court are the parties' cross motions for summary judgment pertaining to the sole remaining claim of breach of contract. The matter is before the undersigned Magistrate Judge pursuant to a referral order from Chief District Court Judge Carr under 28 U.S.C. § 636(b)(1) and Local Rule 72.1, seeking a report and recommendation on outstanding dispositive motions and a motion to compel discovery, as an alternative. ECF No. 59 (Referral Order).

### I. Overview

The matter involves a dispute over retirement benefits due Plaintiff Carleton E. Averill, II ("Plaintiff" or "Averill"), formerly an insurance agent for Defendant Gleaner Life Insurance Society ("Defendant" or "Gleaner"). Essentially, the parties disagree on the interest rate that should be used to calculate Averill's lump sum retirement benefit and ask the Court, via Fed. R. Civ. P. 56(c), to determine as a matter of law the correct payout. As an alternative remedy,

(3:06CV2867)

Averill asks the Court to compel discovery by granting Averill "direct access" to Gleaner's files.

Averill's motion for summary judgment argues Defendant Gleaner breached the terms of the

Gleaner Supplemental Savings Plan ("GSSP" or "Plan") by using an interest rate contractually

prohibited by the terms of the GSSP, specifically Article 4, to calculate the amount of Plaintiff's

retirement benefit upon the termination of the Plan.  Defendant Gleaner's motion for summary

judgment urges that the rate it used to calculate Averill's retirement benefit amount did not run

afoul of Article 4 because Gleaner used a rate more favorable than provided for by the terms of

the GSSP.

For the reasons that follow, this Court recommends denying both motions for summary

judgment because genuine issues of material fact preclude granting summary judgment to either

party.  The Court recommends granting the motion to compel discovery.

## II.   Facts

### A.   Background

The relevant factual background was provided in Judge Carr's Order dated January 29,

2008, denying in part and granting in part Gleaner's first motion for summary judgment (ECF

No. 26):

> Averill, a licensed insurance agent in Ohio and Michigan, is the owner and
> operator of Cap. Averill, II & Associates, Inc. (CAA) – an independent insurance
> agency. CAA managed its own office, hired its own employees and set its hours.
> Averill began selling insurance on behalf of Gleaner in 1985 and did so until his
> termination in January, 2007.
>
> . . . .
>
> In 1988, Gleaner established the Gleaner Supplemental Savings Program

-2-

(3:06CV2867)

(GSSP). Gleaner initially established the GSSP as a tax-exempt retirement benefits plan for its employees pursuant to § 457(e)(12) of the Internal Revenue Code. That provision excludes employer contributions to non-elective deferred compensation plans from taxation if the plan includes, without individual variation, all individuals with equal relationships to the payor. With regards to the GSSP's termination and/or modification, the GSSP agreement provided:

> The Board of Directors reserves the right to modify or to amend, in whole or in part, or to terminate, this Program at any time. However, no modification, amendment or termination of the Program shall adversely affect the right of any Member to receive the benefits created under the Program by the Board of Directors with respect to such Member.

[Pl.'s Exh.'s 3-5, Art. 4].

The GSSP also included a choice of law provision providing that the "Plan shall be construed, regulated, and administered under the laws of the state of Michigan." [Pl.'s Exh.'s 3-5, Art. 5.07].

. . . .

In 2005, Gleaner, after conducting a review of the GSSP, concluded based on the limited legal precedent interpreting § 457 and discussions with representatives of the Internal Revenue Service, that there was a significant risk that the IRS would conclude that the GSSP was not covered by § 457 and, accordingly, its beneficiaries owe taxes on any accrued benefits, plus additional penalties and interest. Averill alleges that Gleaner, rather than being motivated by an internal assessment, had failed to set aside the "matching funds" it was allegedly required to.

Gleaner shortly thereafter terminated the program, and distributed to each beneficiary a portion of the accrued benefits. Averill, who had contributed $47,182.91, received a payment of $68,140.97. In addition, Gleaner offered a supplemental payment of approximately $60,000 in exchange for the release of any claims they may have against Gleaner. Averill rejected the supplemental payment.

ECF No. 48 at 2-7.

**B.     The Evolution of the GSSP**

Defendant Gleaner established the Gleaner Supplemental Savings Program in 1988. The

-3-

(3:06CV2867)

GSSP was amended and restated in its entirety in 1993.  The 1993 version was later amended in

1998 and 1999 with the final amendment and termination of the Plan occurring in 2005.[1]

Article 4 of the 1988 GSSP[2], which is at the crux of Plaintiff's argument, states as

follows:

> The Board of Directors reserves the right to modify or to amend, in whole or in part,
> or to terminate, this Plan at any time. *However, no modification, amendment or*
> *termination of the Plan shall adversely affect the right of any Member to receive the*
> *benefits created under the Plan by the Board of Directors with respect to such*
> *Member.*

ECF No. 54, Ex. 1 at 12 (emphasis added).  Gleaner made no changes to Article 4 until the 2005

amendment and termination of the GSSP when it added the following language, in pertinent part:

> 2.      Article 4 of the Plan is amended to *add* the following additional
> language at the end of that Article, effective as of November 7, 2005:

>> Upon termination of the Plan by action of the Board of Directors, all
>> benefits payable under the Plan shall be paid to Members . . . in the
>> form of a single sum distribution as soon as administratively possible.
>> For purposes of determining the amount of the single sum payment
>> owing to a Member . . . upon termination of the Plan, the Member's
>> Accrued Benefit shall be converted to a single sum payment using the
>> 1994 Group Annuity Mortality table (Male/Female) and an *interest*
>> *rate of eight and one-half percent per year*, compounded annually.
>> A Member, . . . who is paid the single sum value of the Member's
>> Accrued benefit determined in accordance with this Article shall have
>> no further claim for Plan benefits against the Plan or against Gleaner
>> Life Insurance Society.

---

[1]  The Court refers to these amendments and restatements collectively as GSSP
"versions."

[2] Article 4 of the 1993 GSSP is identical to the 1988 version except the 1993 version
substitutes the word "Program" for the word "Plan" used in the 1988 version.  ECF No. 54, Ex. 2
at 14.

-4-

(3:06CV2867)

ECF No. 54, Ex. 5 (emphasis added).  This final amendment to the GSSP is dated November 7, 2005, which is also the effective termination date of the GSSP.  ECF No. 54, Ex. 5.

## II.  **Procedural History**

Plaintiff filed the instant matter alleging six causes of action.  *See* ECF No.1.  In response to a motion for summary judgment filed on behalf of all defendants, the district court dismissed with prejudice all causes of action except Count 2, a claim for breach of contract.  *See* ECF No. 48.  Having found that the record before it did not support a determination that there was no "triable issue," the district court declined to grant summary judgment on the breach of contract claim.  ECF No. 48 at 17.  The district court granted the parties leave to conduct further discovery regarding the breach of contract claim and imposed a schedule for the production of expert reports and the taking of expert depositions.  *See* ECF No. 49.

After conducting additional discovery, the parties filed cross-motions for summary judgment and oppositions to the opposing parties' motion.  *See* ECF Nos. 53-58.  Gleaner's motion seeks the dismissal of Averill's claims with prejudice and an award for costs, fees and any other relief deemed appropriate.  *See* ECF No.  55.  Specifically, Plaintiff's motion seeks a ruling as to liability only with the amount of damages, if any, being determined in a subsequent proceeding.  As an alternative to summary judgment, Plaintiff seeks to compel discovery.  *See* ECF No. 53.

With the parties' competing motions pending, this Court permitted the parties to argue their positions telephonically.  Consequently, the Court renders this Report and Recommendation

-5-

(3:06CV2867)

having had the benefit of the parties' additional viewpoints on this matter.

### III.   Law

#### A.   Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (*citing Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent

-6-

(3:06CV2867)

evidence in the record to bolster [the] otherwise questionable affidavit"). Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson v. Liberty Lobby*, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

"The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (*citing John v. State of La. (Bd. of Tr. for State Coll. & Univ.)*, 757 F.2d 698, 705 (5th Cir.1985)). In fact, the standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. The fact that both parties have moved for summary judgment

-7-

(3:06CV2867)

does not mean that the Court must rule in favor of one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts.  *See Begnaud v. White, 170 F.2d 323, 327 (6th Cir. 1948)* (the fact that both parties move for summary judgment does not require the court to find that no issue of fact exists).

In the instant case, both parties seek to resolve this case through summary judgment.  The Court  reviews each party's motion separately and determines whether a judgment may be entered in accordance with the standards of Rule 56.  If, however, there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the Court will render judgment.  Both motions must be denied if the Court finds that there is a genuine issue of material fact.

The instant matter is a case wherein the denial of both motions is appropriate.

**B.      Breach of Contract – Michigan Law[3]**

Under Michigan law, the elements of breach of contract are: "1) parties competent to contract, 2) a proper subject matter, 3) a legal consideration, 4) mutuality of agreement, and 5) mutuality of obligation." *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. App. 1991).  Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of the evidence the terms of the contract, that the defendant breached terms of the contract, and that breached caused plaintiff's injury.  *See In re Brown,* 342 F.3d 620, 628 (6th Cir.  2003) (*citing Platsis v. E.F. Hutton & Co., Inc.*, 642 F.Supp. 1277, 1309 (W.D. Mich. 1986)).

---

[3]  The district court ruled and no party has contested that Michigan law governs the interpretation of the GSSP.  *See* ECF No. 48 at 5 (referencing Pl.'s Exs. 3-5, Art. 5.07).

(3:06CV2867)

###### C.  Contract Interpretation – Michigan Law

Under Michigan law, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties. *Old Kent Bank v. Sobczak,* 243 Mich.App. 57, 63-64, 620 N.W.2d 663 (Mich. Ct. App. 2000). The court is to read the agreement as a whole and attempt to apply the plain language of the contract itself. *Id.* If the intent is clear from the language of the contract itself, there is no place for further construction or interpretation of the agreement. *Farm Bureau Mut. Ins. Co. v. Nikkel,* 460 Mich. 558, 566, 596 N.W.2d 915 (Mich. 1999). A contract provision that is clear and unambiguous must be "taken and understood in [its] plain, ordinary, and popular sense." *Mich. Mut. Ins. Co. v. Dowell,* 204 Mich.App. 81, 87, 514 N.W.2d 185 (Mich. Ct. App. 1994). Unambiguous contract provisions are not subject to interpretation and must be enforced as written. *Id.* "The intention must be gathered, not from what a party now says he then thought but from the contract itself." *County of Cass v. Lee,* 271 Mich. 491, 494-95, 261 N.W. 74 (Mich. 1935).

If a term is not defined in a contract, it is to be interpreted in accordance with its commonly used meaning. *Henderson v. State Farm Fire & Casualty Co.,* 460 Mich. 348, 354, 596 N.W.2d 190 (Mich. 1999). Clear and unambiguous language may not be rewritten under the guise of interpretation. *S. Macomb Disposal Auth. v. Am. Ins. Co.,* (on remand), 225 Mich.App. 635, 653, 572 N.W.2d 686 (Mich. Ct. App.1997). Courts may not create ambiguities where none exist. *Id.* Contract language is ambiguous when, after reading the entire document, its language can reasonably be understood in different ways. *Royce v. Citizens Ins. Co.,* 219 Mich.App. 65, 70 (Mich. Ct. App. 1996). "However, if a contract, even an inartfully worded or clumsily

-9-

(3:06CV2867)

arranged contract, fairly admits of but one interpretation, it may not be said to be ambiguous or

fatally unclear." *Mich. Twp. Participating Plan v. Pavolich,* 232 Mich.App. 378, 382, 591

N.W.2d 325 (Mich. Ct. App. 1998).  Likewise, a contract is not rendered ambiguous by the fact

that a relevant term is not defined.  *Henderson,* 460 Mich. at 354.

      The initial determination of whether contract language is ambiguous is a question of law

for the court to decide.  *Rainbow Nails Enterprises, Inc. v. Maybelline, Inc.,* 93 F.Supp. 2nd 808,

820 (E.D.Mich.2000) (*citing Port Huron Educ. Assoc. MEA/NEA v. Port Huron Area Sch. Dist.,*

452 Mich. 309, 323, 550 N.W.2d 228 (Mich. 1996).  Once the court determines that the contract

is ambiguous, it is subject to further construction or interpretation.  "It is well settled that the

meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp*

*v. United Ins. Group Agency, Inc.,* 468 Mich. 459, 469, 663 N.W.2d 447 (Mich. 2003).  "In

resolving such a question of fact, i.e., the interpretation of a contract whose language is

ambiguous, the jury is to consider relevant extrinsic evidence." *Id.*  "Looking at the relevant

extrinsic evidence to aid in the interpretation of a contract whose language is ambiguous does not

violate the parole evidence rule." *Id.* at 470.  Ambiguity in a contract is resolved against the

party who prepared it.  *Lichnovsky v. Ziebart Int'l Corp.,* 93 Mich.App. 60, 69, 285 N.W.2d 795

(Mich. Ct. App. 1979).

      When a contract's terms are ambiguous, parol evidence may resolve the ambiguity and

ascertain the intention of the parties.  *Edoff v. Hecht,* 260 N.W. 93, 96 (Mich. 1935) (citation

omitted).  Parol or extrinsic evidence may be relied upon for the purpose of aiding in the

interpretation or construction of a written instrument, where the language of the instrument itself

-10-

(3:06CV2867)

taken alone is such that it does not clearly express the intention of the parties or the subject of the agreement.  Such evidence is admitted not to add to or detract from the writing, but merely to ascertain what the meaning of the parties is.  *Edoff v. Hecht*, 260 N.W. 93, 96 (Mich. 1935) (*citing Wolverine Lumber Co. v. Phenix Ins. Co.*, 108 N.W. 1088 (Mich.1906).  Parole evidence bars language which adds to or detracts from the writing, but not evidence which merely ascertains the meaning of what the parties intended.  *Id.*

### IV.  Analysis

#### A.    Motions for Summary Judgment

At issue is the correct amount of the lump sum payout Averill was entitled to receive at the termination of the GSSP.  Nothing more greatly affects the (present value) calculation of this amount than the interest rate applied.  The money contributed is unchanging.   The interest rate applied, whether or not adjusted for the cost of living, will ultimately determine the value of the payout.[4]

#### 1.    Averill's Motion

Averill asks the Court to rule as a matter of law that Gleaner breached the terms of the GSSP contract by using 8.5% to calculate Averill's retirement benefit upon termination rather than 2%, which, according to Averill, complies with the unambiguous terms of the GSSP.[5]

---

[4] Of course duration will also influence the calculation.  The parties agree on the use of the 1994 Group Annuity Mortality Table (Male/Female) ("1994 GAM").  *See* ECF No. 54 at 9.

[5] Because the lump sum payout represents the Present Value of a future amount, the lower interest rate yields a higher payment.  Put differently, "[t]he higher the interest rate the lower the amount of money needed now [by Gleaner] to achieve that future amount."  *See* ECF No. 54 at 2.

-11-

(3:06CV2867)

Averill asserts that Gleaner violated Article 4 of the GSSP because an earlier version of the GSSP stated that 4% should be used to calculate a lump sum disbursement from the GSSP. Thus, when Gleaner used 8.5%, which clearly exceeds 4%, Gleaner "adversely affect[ed] the right of [Averill] to receive the benefits created under the Plan," breaching Article 4 of the GSSP. ECF No. 54, Ex. 1 at 13 (Article 4 of the GSSP).

Defendant argues in its opposing pleading that "Gleaner Life did not breach the termination provision of the GSSP, Article 4, because the GSSP's stated rate of interest is 9% and Gleaner Life used an interest rate of 8 ½ %, one more favorable to GSSP participants such as Plaintiff and which yielded a *greater* lump sum termination benefit than would a 9% rate of interest." ECF No. 57 at 2 (emphasis in original).  Additionally, Defendant relies heavily upon the testimony of its expert, Jeffrey Rose, in arguing "that the 8 ½ % interest rate used by Gleaner Life to compute the termination benefit for the GSSP was appropriate, [and] did not adversely affect Plaintiff . . . ." ECF No. 57 at 2.

## 2.     Gleaner's Motion for Summary Judgment

Gleaner argues that in calculating Averill's retirement benefit, there is no issue "as to its compliance with the GSSP termination provision" and as a result "there has been no breach of contract." ECF No. 55 at 4.  Gleaner relies almost solely upon its expert's testimony that the 8.5% figure used to calculate the retirement benefit was "an appropriate interest rate for long-term investment return on assets." ECF No. 55 at 7.  In sum, Gleaner's position is that using 8.5%  to calculate Averill's benefit did not violate the terms of Article 4 and is in specific compliance with the termination provision of the GSSP; therefore, no breach occurred.

(3:06CV2867)

Averill retorts that "[t]he GSSP provides all the terms necessary to achieve . . . an interest rate assumption for the purposes of calculating the present value of a single lump sum payment upon termination."  ECF No. 58 at 2.  To that end, Averill reasons that the GSSP's written terms dictate what interest rate Gleaner should have used despite what a prudent investor could achieve.  ECF No. 58 at 2.

### 3.    Application of Rule 56 to Both Parties' Motions

After a thorough review of the pleadings, documents and hearing the arguments of counsel, the Court makes the following findings.  Plaintiff has sufficiently established the existence of the elements essential to its breach of contract claim.  The parties agree that the 1994 Group Annuity Mortality table (Male/Female) applies.  The parties also agree that the original language of Article 4 remains intact.   That is:

> The Board of Directors reserves the right to modify or to amend, in whole or in part, or to terminate, this Program at any time. However, no modification, amendment or termination of the Program shall adversely affect the right of any Member to receive the benefits created under the Program by the Board of Directors with respect to such Member.

ECF No. 54, Ex. 2 at 14.  The Court concurs, finding that language of Article 4 has survived each version of the GSSP.  Therein lies the problem.

The parties disagree on which terms "adversely affect[s]" Averill's benefit and, against that backdrop, which terms of the various versions of the GSSP survive and apply to the calculation of Averill's retirement benefit.  At first blush, it appears that the 1993 amended and restated version would control because the preamble states "[e]ffective May 1, 1993, the Supplementary Savings Program has been amended and restated in its entirety."  ECF No. 54,

(3:06CV2867)

Ex. 2 at 1.  A problem arises because the inclusion or omission of certain provisions (that exist

in other versions) in the 1993 Restated GSSP arguably "adversely affect" Averill's benefits.  ECF

No. 54, Ex. 2 at 14.  For example, the original 1988 GSSP included a cost of living feature that is

not included in the 1993 Restated GSSP or any subsequent version.  Failure to adjust for the cost

of living could result in a lower payout, an obvious adverse affect.  Also, the 1988 GSSP placed

no restriction on the amount of a single lump sum payment.  The 1993 Restated GSSP imposes

restrictions.  *See* ECF 54 at 7.  The 2005 Amendment, for example, imposes an interest rate of

8.5%; the 1994 Restated GSSP imposed an interest rate of only 4%.  A higher interest rate would

result in a lower  payment to Averill, another obvious adverse affect.  These provisions and

others cause Averill to claim that the application of certain terms of the 1993 and 2005 versions

of the GSSP  "adversely" affect his benefits.  His point is well taken.[6]

   Neither party has offered sufficient support for its position regarding the applicability of

the conflicting versions of the GSSP.  Plaintiff insists on a mixture  of terms from various GSSP

versions that are, presumably, the most advantageous to him.  For example, he advocates for

lump sum distribution without restriction and the cost of living features from the 1988 GSSP

version.  ECF No. 54 at 7 & 10.  He also advocates for the application of certain terms from later

versions such as the 1994 GAM table that was included in Amendment 2005-I but not included

in earlier versions or amendments to the GSSP.  Similarly, Averill advocates for the application

of the 4% rate provided in the 1993 GSSP (with the 1988 cost of living adjustment applied) but

---

  [6]  Plaintiff has provided a fairly useful table showing the "various conflicting terms in the
1988 GSSP, the 1993 GSSP, Amendment II, and Amendment 2005-I."  *See* ECF No. 54 at 3.
This table excludes the 1998 Amendment.

-14-

(3:06CV2867)

objects to the interest rates set forth in later versions.[7]

Gleaner remains remarkably silent about the specific language of the various GSSP's preferring, instead, to rely upon its expert's testimony as to what terms and interest rate "are more favorable" to Averill or to argue that Plaintiff is mistakenly relying upon a different retirement plan altogether.  ECF No. 57 at 3 & 4.

Based on the record before it, this Court cannot rule as a matter of law pursuant to Rule 56 what comprises the GSSP.  The GSSP is a series of written and seemingly irreconcilable documents, rendering it decidedly ambiguous.  As stated above, "[i]t is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp v. United Ins. Group Agency, Inc.,* 468 Mich. 459, 469, 663 N.W.2d 447 (2003).  "In resolving such a question of fact, i.e., the interpretation of a contract whose language is ambiguous, the jury is to consider relevant extrinsic evidence." *Id.*  Until questions such as: Which terms from the various GSSP versions have no adverse affect on the calculation of Averill's retirement benefit are resolved, either through stipulation or a trial, genuine issues of material fact preclude summary judgment.

     **B.**      **Plaintiff's Motion to Compel**

          **1.**      **Standard of Review**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

---

[7] The 1988 GSSP did not provide an interest rate and the Amendment II and Amendment 2005-I provided higher interest rates.

-15-

(3:06CV2867)

party . . . ."  A trial court has the right to control the discovery schedule, *see, eg.*, *Kennedy v. Cleveland*, 797 F.2d 297, 300-01 (6th Cir. 1986), and broad discretion to determine the proper scope of discovery.  *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).

If one party fails to comply with discovery requests, the other party may seek a motion to compel discovery responses.  Fed. R. Civ. P. 37(a)(1).  The motion must include a certification that it made a good faith effort to confer with the non-complying party.  *Id.*  If a party falters in its discovery obligations, the Court has discretion, under Rule 37(a), to compel appropriate discovery responses.  *Id*; *see Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).

## 2.    Analysis

This case presents a dispute over the terms of a series of written documents.  Under Michigan law, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties.  The record before this Court does not inform even the most studious reader of the intent of the parties.  The Court is convinced that extrinsic evidence may be useful in resolving this matter.  That evidence, however, may not be appropriately available to both parties due to Gleaner's failure to produce all relevant documents requested.

As an alternative to granting summary judgment, Averill requests that Gleaner be compelled to produce certain information first sought in April 2007.  In opposition to Averill's motion to compel, Gleaner's argues that Plaintiff failed to comply with Local Rule 37.1 and, as

(3:06CV2867)

importantly, Judge Carr's Case Management Conference Order for seeking to compel discovery.[8]
ECF No. 56 at 2.  Gleaner appears to be correct.

Despite Averill's procedural deficiency, the undersigned recommends compelling discovery while cognizant of matters that bode against that course of action.  First, the Sixth Circuit has upheld the denial of a motion to compel where counsel failed to follow the technical requirements of that Rule.  *Mohney v. U.S.A. Hockey, Inc.,* 5 Fed. Appx. 450, 459 (6th Cir. 2001).  Next, Judge Carr has closed discovery and would justifiably be reluctant to reopen it in absence of a showing of good cause.[9]  Lastly, for reasons not clear to the Court, Averill has not provided good cause for failing to follow the procedure established for seeking to compel discovery provided by the Federal Rules and Judge Carr's Order.  Nevertheless, based upon the record before it, the Court believes that fairness dictates overlooking Averill's non-compliance and compelling Gleaner to do what it should have done long ago – produce emails and other communication regarding the termination of the GSSP.

Averill has been provided copies of emails exchanged between Gleaner's President/CEO, Michael Wade, and its expert, Jeffrey Rose.  Judging from the sampling of emails attached to Averill's motions, these emails are relevant or likely to lead to the discovery of information relevant to the most crucial remaining issue – the interest rate to be applied at the termination of

---

[8]  Gleaner's threshold position is that granting its motion for summary judgment will render moot Averill's motion to compel.

[9]  Alternatively, information not produced may be barred from use as an exhibit or rebuttal.  That sanction, however, could be have a greater adverse affect on Averill than Gleaner.

(3:06CV2867)

the GSSP.  Rose's employer, Buck Consultants, provided the emails to Averill in response to a

subpoena.  An excerpt from an email sent to expert Jeffrey Rose from President/CEO Michael

Wade stated in pertinent part:

> From: Mike Wade
> Sent: Friday, September 23, 2005 2:35 PM
> To: Rose Jeffrey C
> Cc: Darrell Lindman
> Subject: RE: GSSP
>
> . . . .
>
> > *Are we legally required to distribute the present value of vested*
> > *amounts, or can we distribute something less?  As in, "the GSSP is*
> > *terminated and distribution will be as follows: $XXX representing*
> > *100% of your contributions and interest thereon." ...or any amount*
> > *in between at our discretion?*
>
> *Mike*

Gleaner has not produced its version of the same emails and makes no apologies.  Rather,

Gleaner blithely responds that it produced a "banker's box" of "documents" and makes no

mention of the production of any electronic communications whether in hard copy or otherwise.[10]

 ECF No. 56 at 3.  Gleaner cavalierly remarks that it "is hardly surprising" that its actuarial

would have "e-mails or other documents which Gleaner Life does not have."  ECF No. 56 at 3.

To the contrary, the Court finds it incredible that Gleaner would not have access to the emails

written by a high-ranking executive such as the President/CEO on a matter as important as the

termination of the GSSP, the subject of an anticipated and long-pending litigation.  That emails

---

[10]  Plaintiff requested production from Gleaner of "all documents . . . related to
communication . . . related to the termination of the GSSP" and  "all documents . . . related to
Amendment No.  2005-1 to the GSSP."  ECF No. 53 at 2.

(3:06CV2867)

are made and stored electronically only serves to heighten the Court's suspicion.  An archived version of the emails should be available for production.

The harm of non-production is not lessened because Averill now possesses some of the emails from a source other than Gleaner.  Plaintiff is entitled to know *what* Gleaner possesses. This knowledge may influence Averill's posture at trial or in any future settlement negotiations. Given the inability to weave into one cohesive document the various versions of the GSSP and, therefrom, to determine the intent of the parties, these emails (and possibly other) communications are relevant, necessary and, quite frankly, should have been produced by Gleaner long ago.

As Mr. Justice Brandeis correctly observed, "sunlight is the most powerful of all disinfectants." *Buckley v. Valeo*, 424 U.S. 1, 67 (1976) (*quoting* L.  Brandeis, Other People's Money 62 (Nat'l Home Library Foundation ed.1933).  Under all the circumstances of the case, Gleaner should be compelled to produce any communications (electronic or otherwise) relating or referring to or evidencing communication related to communication between or among Gleaner Board members or officers related to the termination of the GSSP or Amendment No. 2005-1 to the GSSP.  If unable to produce this information, as a sanction, the Court should consider barring the testimony of Gleaner's expert, Jeffrey Rose.

(3:06CV2867)

## V.    <u>Conclusion and Recommendation</u>

For the reasons provided above, this Court finds that genuine issues of material fact exist

and that neither party is entitled to judgment pursuant to Rule 56.

Accordingly, the Court recommends denying both motions for summary judgment.

Further, the Court recommends that Averill's motion to compel discovery be granted.


                /s/ Benita Y. Pearson
Dated: February 27, 2009                    United States Magistrate Judge


### <u>OBJECTIONS</u>

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-20-