IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Carleton E. Averill, II,                                    Case No. 3:06CV2867

        Plaintiff

    v.                                                            ORDER

Gleaner Life Insurance Society, et al.,

        Defendant

This is a dispute about retirement benefits. Plaintiff is a former agent with the defendant

insurance company. In a prior order [Doc. 66] I denied counter-motions on the single remaining

claim among the many claims plaintiff originally asserted in his complaint.

That claim, which is awaiting trial, is that the defendant's actions breach Article 4 of the

defendant's retirement plan. That provision stated:

> The Board of Directors reserves the right to modify or to amend, in whole or in part,
> or to terminate, this Program at any time. However, no modification, amendment or
> termination of the Program shall *adversely affect* the right of any Member to receive
> the *benefits credited* under the Program [*i.e.*, Plan] by the Board of Directors with
> respect to such Member.

[Doc. 54, Ex. 1] [Emphasis supplied].

At issue is whether amendments to the plan, which converted it from one paying annuities

to one paying only lump sums, and which also fixed how the lump sums would be calculated,

"adversely affected"the "benefits credited under the Program by the Board of Directors."

One of the changes was to use an interest factor of 8.5% to determine the amount of the lump

sum. Plaintiff claims the company should have used an interest factor of 2%. Had it done so,

1

according to his calculations, payout to him would have been $485,696.58. By using the 8.5% factor, the company paid plaintiff $68,140.97.

The question is whether the amendments, including, *inter alia*, conversion to lump sum payments and use of the 8.5% factor, "adversely affect[ed] the right of any Member to receive the benefits credited under the Program by the Board of Directors with respect to such Member."

To resolve this suit, the trier of fact will have to determine whether the impact under Article 4 of the amendments related to the benefits which had accrued as of the date of the amendments, or, instead, related to benefits as of that later date on which the plaintiff retired. The trier will thus have to determine just what "benefits credited" means.

Does "benefits credited" mean those accrued as of the date of the amendment imposing the 8.5% factor, or does it mean the benefits ultimately due to the plaintiff sometime after the amendments went into effect.

If the former, any adverse affect of the amendments relates only to those benefits accrued as of their adoption date, and the 8.5% factor could be imposed for benefits accruing between that date and plaintiff's retirement date.

If "benefits credited" means the entirety of the benefit due on retirement, then the impact of the 8.5%, rather than a lower factor – whether 2% or something else between those two percentages – is much greater, and thus potentially more adverse.

Pending is defendant's motion in limine and to quash subpoenas served on various individuals with various connections to the defendant. Defendant contends that none of these witnesses can offer competent or relevant testimony as to what the draftsman and others may have meant when they prepared and adopted Article 4.

2

I agree. As I will discuss briefly with regard to each of the subpoenaed witnesses, none of them wrote the crucial language. None were involved in any negotiations or other events leading to its inclusion in its final form in the plan. None of them expressed, or were responsible for expressing a view at any pertinent time as to what they understood the language to mean.

That kind of witness, offering that sort of testimony, would be welcome. The subpoenaed witnesses in this case are, though, not of that kind. Nor is what they might say of that sort.

I turn now to the individual recipients of plaintiff's subpoenas.

Joseph Burnett, according to defendant, is one of its former employees. According to the defendant, he is elderly and afflicted with dementia or Alzheimer's disease. If so, he is not competent to testify, even if he has relevant testimony to offer.

Plaintiff asks for proof of his condition. At this point, with trial about to start, I am willing to accept counsel's representations. If those representations later prove to be false, sanctions can be invoked. For now, it is enough to quash the subpoena on Mr. Burnett on the basis of his apparent, and uncontradicted incapacity to testify.

Frank Dick is the defendant's former President. With regard to his support for the amendments, he testified on deposition that he relied on the company's actuarial and tax consultants. His testimony was, in effect, that he went along with what others told him was in the company's best interest, and, as well, that of its agents. His testimony sheds no light on what the draftsman and others involved in creation, insertion, implementation and application of the pertinent language meant.

Several other subpoenaed witnesses are board members. Their testimony about their vote to adopt the amendments reflects their similar reliance, in varying ways and degrees, on the

3

recommendations of others – principally the company's management.[1] Though one voted "nay" because he had "second thoughts," that is immaterial.

What matters is whether any of the board members whom plaintiff has subpoenaed have anything to add with regard to the meaning of "benefits credited" as used in Article 4. Plaintiff has not shown that any of the subpoenaed directors have anything pertinent to add.

Three of the subpoenaed witnesses are, like plaintiff, former agents. They share his view about how the plan should be interpreted and applied. That they agree with his interpretation is not relevant. None is in a position to tell us what the draftsman and anyone else responsible for the presence or interpretation of the disputed term meant to those individuals.

The same is true with regard to the plaintiff's own present self-serving interpretation of the plan language – which he had not seen until company counsel was deposing him. He and his fellow former agents have no basis for any opinion that they might express, and that is all that their testimony would be – their opinion.

The remaining witness is the plaintiff's current secretary who, like him, is a former employee of the defendant. While there, she was the beneficiary of a different plan. Her plan, unlike plaintiff's plan, qualified under ERISA. Its terms and conditions, and her view and understanding of them, and anything else she might have to say, have no relevance to the issue in dispute.

In making its arguments, the defendant has pointed to excerpts from the depositions of several of the witnesses. In response, the plaintiff claims that those witnesses were not asked about their understanding of the disputed term.

---

[1] Who, in turn, in all likelihood, relied on those whom they retained or employed to write the plan in its various iterations and, as well, Article 4. We do not know if that is so, but it was up to the plaintiff to find out.

4

This is irrelevant. As given, the testimony gives sufficient insight into why the witnesses supported the amendments to make clear that their understanding of "benefits credited" was not the fulcrum of their decision.

Plaintiff has not shown, moreover, that his proposed witnesses are competent to testify about what the term meant. They did not formulate it; they are not responsible for its presence in the plan. They were not called on to interpret it when questions arose.

In essence, plaintiff's argument is: 1) the subpoenaed witnesses either were responsible overall for the plan and amendments or affected by them; 2) therefore, he is entitled to find out, if he can, what they would have thought the dispute provision meant at various pertinent times, had they had it in mind at those times; and 3) this is so, even though he has little, if any idea, what their testimony might be.

Bottom line: plaintiff has not shown what *testimony*, in fact, each witness would provide. That being so, he has not shown the relevance of their testimony, whatever it might be.

Defendant's motion in limine and to quash is well-taken.

It is, accordingly

ORDERED THAT defendant's motion in limine and to quash subpoenas [Doc. 75] be, and the same hereby is granted.

So ordered.


s/James G. Carr
James G. Carr
Chief Judge


5